**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN  DIVISION**


**MARK AND KARLA GIBBS**                                                          **PLAINTIFFS**


**V.**                                   **CASE NO. 4:10CV00293 JMM**


**PRIMELENDING, A PLAINS CAPITAL COMPANY, ET AL.**                 **DEFENDANTS**


**ORDER**

Pending before the Court is Defendant Amy Tueckes' Motion to Dismiss Third Amended

Complaint.  The parties have briefed the issues and for the reasons stated below, the motion is

granted (#136).

Plaintiffs have brought claims against Tueckes pursuant to the Real Estate Settlement

Procedures Act ("RESPA") under 12 U.S.C. § 2607, and the common law torts of negligence, civil

conspiracy, and acting in concert.  Tueckes brings her motion pursuant to Federal Rule of Civil

Procedure 12(b)(6) asserting that Plaintiffs have failed to state a claim for which relief can be

granted.[1]

---

[1]The Court has previously addressed Tueckes Motion to Dismiss based upon lack of
jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(2).  The Court has not
addressed a Motion for Failure to State a Claim filed by Tueckes pursuant to Federal Rule of
Civil Procedure 12(b)(6).

I. <u>Complaint Allegations</u>

In January of 2009, Morgan Stanley contacted Plaintiffs with an offer to refinance their home.[2]  Plaintiffs agreed to refinance their home with Morgan Stanley, but were re-directed to PrimeLending.

At the same time as plaintiffs's refinancing, Defendant Amy Tueckes was employed by Commonwealth which was a title insurance agency for Lawyers Title Insurance Corporation.  It was Tueckes job to solicit title insurance business from PrimeLending.  When Commonwealth was unable to handle the title business flowing from PrimeLending,  Tueckes referred this overflow title business to eLender Services who always choose eLender Escrow as the escrow agent.

ELender Services or eLender Escrow would pay a kickback fee from this referral overflow business to a limited liability company formed, and partially owned by Tueckes.  Tueckes performed no additional work for this kickback fee other than making the referral.  Tueckes would, in turn, pay part of this fee to PrimeLending or its employees for being the source that originally contacted Tueckes.

PrimeLending began plaintiffs's refinancing process by contacting Tueckes.  Tueckes referred them to eLender Services who used eLender Escrow as the escrow agent even though the State of California had previously revoked the authority of eLender Escrow to act as an escrow agent because it failed to properly file its financial statements.  Plaintiffs allege that Tueckes knew or should have known that eLender Escrow's license had been revoked.

_____

[2]Plaintiffs had previously financed the purchase of their home by executing a $1,510,000.00 promissory note made payable to Morgan Stanley Credit Corporation ("Morgan Stanley Note") and a mortgage on their home located in Pulaski County, Arkansas, to secure that note  ("Morgan Stanley Mortgage").

On July 22, 2009, PrimeLending, through its agent, Jeffery Brown mailed the "Mortgage Loan Origination Agreement" to plaintiffs for execution.  PrimeLending charged plaintiffs $15,095.00 in fees.  PrimeLending contacted plaintiffs by telephone to set a closing location. Howard Wayne Harts, a Notary Public, handled the closing on August 11, 2009, at the business offices of plaintiff Mark Gibbs which is located in Pulaski County.  At closing, plaintiffs executed a promissory note payable to US Bank for $1,200,000.00 ("US Bank Note") and a mortgage in favor of US Bank ("US Bank Mortgage") to secure the note.  Funds from this loan and $78,900.00 and $73,189.17  from plaintiffs's private accounts were transferred to eLender's Services's bank account to be used by eLender Escrow to pay the Morgan Stanley Note and release the Morgan Stanley Mortgage.  Unfortunately, the Morgan Stanley Note was not paid and it was discovered that Russell Biszantz, owner of eLender Escrow, had taken the money intended to pay off the note for his own use.  As a result, plaintiffs now have two mortgages encumbering their home and a total indebtedness of $2,702,089.17.

II.  Analysis

To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A.  RESPA Claims

Plaintiff alleges that Tueckes violated 12 U.S.C. § 2607 and 24 CFR 3500.14 which is one of the rules promulgated by the United States Department of Housing and Urban Development pursuant to RESPA.   Tueckes contends that because there are no factual allegations

3

in Plaintiffs' complaint that Tueckes actually received any money from the Plaintiffs' refinance

transaction, she can not be found liable under the RESPA.  Tueckes points out that Plaintiffs'

allegations are that Russell Biszantz stole all of the Plaintiffs' money before anyone else was paid,

including Tueckes alleged kickback monies.

12 U.S.C. § 2607(a) states "No person shall give and no person shall accept any fee,

kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that

business incident to or a part of a real estate settlement service involving a federally related

mortgage loan shall be referred to any person."

Plaintiffs' allegations are that Tueckes had, in the past, violated § 2607 with the alleged

kickback scheme by accepting kickbacks from eLender Services or eLender Escrow based upon

referred business and that she intended to participate in an identical scheme regarding Plaintiffs'

loan.  Plaintiff also alleges that Tueckes did not perform any work for these kickback fees other

than making the referral.  Plaintiffs also allege that the loan process was not completed in

Plaintiffs' case because Plaintiffs' monies were stolen by Biszantz.

For Tueckes to have violated § 2607(a) in regard to Plaintiffs' loan, she must have either

given or accepted a fee, kickback, or thing of value.  The allegations are that Tueckes received and

gave kickbacks in the past and that she intended to do the same in Plaintiff's mortgage transaction.

However, there are no allegations that Tueckes actually received or gave any kickbacks in

Plaintiffs' transaction, because the money was stolen before any alleged kickback could be paid.

12 U.S.C. § 2607(b) states "No person shall give and no person shall accept any portion,

split, or percentage of any charge made or received for the rendering of a real estate settlement

service in connection with a transaction involving a federally related mortgage loan other than for

services actually performed."  24 CFR § 3500.14(c) states if a charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates RESPA.

The complaint alleges that PrimeLending charged $15,095.00 in fees and that eLender Escrow charged $20,761.70 for services not provided.  There are no allegations that Tueckes or Commonwealth charged Plaintiffs a fee.   Thus, Plaintiffs have failed to state a violation of § 2607(b) against Tueckes.

B.  Negligence Claims

Plaintiffs also bring a negligence claim against Tueckes.  The essential elements of a cause of action for negligence are that the plaintiff show a duty owed and a duty breached, and that the defendant's negligence was a proximate cause of the plaintiff's damages.  *See Scott v. Cent. Ark. Nursing Ctrs.*, Inc., 101 Ark.App. 424, 434, 278 S.W.3d 587, 595 (2008).

Plaintiffs negligence claim as set out is Count IX is based upon allegations that when Tueckes referred the closing of Plaintiffs' home refinancing to Elender, she failed to use ordinary care that a reasonably careful person in that situation would or would not have done in order to avoid harming Plaintiffs and that due to Tueckes negligence, Plaintiffs were injured.

In paragraph 54 of the complaint, Plaintiffs state that Tueckes was aware or should have been aware that the California Department of Corporations had in August of 2008 revoked the authority of eLender Escrow to act as an escrow business.  In paragraph 112, Plaintiffs state that Tueckes was aware or should have been aware that eLender Escrow lost their license due to its failure to file financial statements with the California Department of Corporations.  In paragraphs 114 and 146, Plaintiffs state that Plaintiffs were not made aware of the referral or kickback fee

arrangements.

There is no mention in any of the factual allegations or in Count IX of any duty owed by Tueckes to Plaintiffs.  There are no documents attached to the Complaint from which the Court could infer a duty owed by Tueckes to Plaintiffs.  Plaintiffs have failed to direct the Court to any Arkansas statute or case law which establishes that Tueckes owed Plaintiffs a duty.  Thus, Plaintiffs have failed to state facts sufficient to support a negligence claim against Tueckes.

C.  Civil Conspiracy and Aiding and Acting in Concert Claims

Plaintiffs have stated in their pleadings that they were not bringing any civil conspiracy or acting in concert claims as separate causes of action.  That being the case, there are no such claims.  *See* Doc. #66 (Oct. 14, 2010).

III.  Conclusion

Plaintiffs' Third Amended Compliant against Tueckes is dismissed with prejudice.

IT IS SO ORDERED THIS  23      day of   March  , 2012.


_____
James M. Moody
United States District Judge